**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON**

**CIVIL ACTION NO. 22-114-DLB**

**RICHARD RUSHING**                                                                **PLAINTIFF**

**vs.**                         **MEMORANDUM OPINION AND ORDER**

**KILOLO KIJAKAZI, Acting Commissioner of
Social Security**                                                     **DEFENDANT**

\*\*\*  \*\*\*  \*\*\*  \*\*\*

This matter is before the Court on Plaintiff Richard Rushing's Motion for Summary Judgment (Doc. # 10), filed pursuant to 42 U.S.C § 405(g), which allows Plaintiff to obtain judicial review of an administrative decision by the Social Security Administration (SSA). Defendant Kilolo Kijakazi, Acting Commissioner of the Social Security Administration, has filed a Cross-Motion for Summary Judgment (Doc. # 13). The Court, having reviewed the administrative record and the parties' motions, and for the reasons stated herein, **affirms** the Commissioner's decision.

**I.   FACTUAL AND PROCEDURAL BACKGROUND**

Richard Rushing is a 22-year-old resident of Lexington, Kentucky. (Tr. 18). In 2019, he applied for child disability benefits and supplemental security income. (Tr. 232–41). In his applications, Rushing alleged disability beginning in January 2018 and continuing through the date of application, based on several physical and mental impairments including a depressive disorder, anxiety disorder, autism, and allergies. (Tr. 87, 100). Both claims were initially denied in April 2020 (Tr. 81, 94), and denied again on reconsideration

in June 2020 (Tr. 107, 120). Rushing requested a hearing before an Administrative Law Judge (ALJ) shortly thereafter. (Tr. 187). The ALJ conducted a telephonic hearing in January 2021. (Tr. 51). After considering the evidence, the ALJ issued an unfavorable opinion in March 2021, finding that Rushing was not disabled. (Tr. 45). Rushing appealed to the SSA Appeals Council, who denied his request for review in March 2022. (Tr. 1). Rushing then filed this action. (Doc. # 1).

II. ANALYSIS

  A. Standard of Review

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Colvin v. Barnhart*, 475 F.3d 727, 729–30 (6th Cir. 2007) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997)). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Kirk v. Secy of Health & Hum. Servs.*, 667 F.2d 524, 535 (6th Cir. 1981)). Courts are not to conduct a de novo review, resolve conflicts in the evidence, or make credibility determinations. *Id.* (citing *Brainard v. Sec'y of Health & Hum. Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)).

Rather, the Court must affirm the Commissioner's decision if it is supported by substantial evidence, even if the Court might have decided the case differently. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). In other words, if supported by substantial evidence, the

Commissioner's findings must be affirmed even if there is evidence favoring Plaintiff's side. *Id.*; *see also Listenbee v. Sec'y of Health & Hum. Servs.*, 846 F.2d 345, 349 (6th Cir. 1988). In determining whether the Commissioner's conclusion is supported by substantial evidence, courts "must examine the administrative record as a whole." *Cutlip*, 25 F.3d at 286.

### B. The ALJ's Determination

To determine disability, an ALJ conducts a five-step analysis. *Walters*, 127 F.3d at 529. Under Step One, the ALJ considers whether the claimant is engaged in substantial gainful activity; Step Two, whether any of the claimant's impairments, alone or in combination, are "severe"; Step Three, whether the impairments meet or equal a listing in the Listing of Impairments; Step Four, whether the claimant can still perform his past relevant work; and Step Five, whether a significant number of other jobs exist in the national economy that the claimant can perform. *See id.* (citing 20 C.F.R. § 404.1520).

The burden of proof rests with the claimant for Steps One through Four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987)). At Step Five, the burden of proof "shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity." *Id.* (citing *Bowen*, 482 U.S. at 146 n.5).

Here, at Step One, the ALJ determined that Rushing had not engaged in substantial gainful activity since the onset of his disabilities. (Tr. 38). At Step Two, the ALJ found that Rushing's depressive disorder, anxiety disorder, autism, and allergies were severe impairments. (*Id.*). At Step Three, the ALJ concluded that Rushing's severe impairments did not meet or medically equal the severity of one of the listed impairments

in the Social Security Act, and so the analysis proceeded to the next step. (*Id.*). Before completing Step Four, the ALJ found that Rushing had the residual functional capacity "to perform a full range of work at all exertional levels[,]" but with several "nonexertional limitations[.]" (Tr. 40). At Step Four, the ALJ noted that Rushing had no past relevant work. (Tr. 43). Lastly, at Step Five, the ALJ concluded that given Rushing's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that he could perform. (Tr. 44). Specifically, based on the testimony of a vocational expert, the ALJ noted that Rushing could perform representative occupations like store laborer, dietary worker, or patient transporter. (*Id.*). Because those jobs can be performed within Rushing's age, education, work experience, and residual functional capacity, the ALJ concluded that he was not disabled within the definitions of the Social Security Act. (*Id.*).

## C. Discussion

On appeal to this Court, Rushing makes two arguments: (1) that the ALJ's finding at Step Three is not supported by substantial evidence and (2) that the ALJ should have concluded that Rushing was more limited in his working ability. (Doc. # 10-1 at 4–13).

### 1. The ALJ's findings at Step Three are supported by substantial evidence.

As described above, at Step Three of the ALJ's decision, the ALJ must determine whether Rushing possesses an impairment or combination of impairments that meet or medically equal the severity of any of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. If Rushing has "an impairment(s) that meets or equals one of [the SSA] listings" the ALJ is required to find that he is disabled, "without considering [his] age,

4

education, and work experience." 20 C.F.R. § 404.1520(a)(4)(iii), (d). In other words, the inquiry ends there and the ALJ must find that Rushing is disabled.

Here, the ALJ concluded that Rushing's functional criteria were not severe enough for his impairments to render him disabled. (Tr. 38–39). Rushing argues that that conclusion is not supported by substantial evidence, essentially asking the Court to reweigh the evidence and come to its own conclusion. (Doc. # 10-1 at 4), But the Court does not resolve conflicts of evidence. *See Cutlip*, 25 F.3d at 286.

Rushing focuses on three impairments: a depressive disorder; an anxiety disorder; and an autism spectrum disorder. (Doc. # 10-1 at 4). Each of those impairments includes "medical criteria" and "functional criteria." 20 C.F.R. § 404, Subpart P, Appendix 1 § 12.00(A)(2)(a)–(b). For an impairment to qualify as a disability, both sets of criteria must be satisfied. *Id.* § (A)(2).[1] The conflict here revolves around the functional criteria. Those criteria determine how a person's impairments limit his or her functioning in a work setting. *Id.* § (A)(2)(b).

There are four functional criteria: (1) Understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. *Id.* The examiner looks at how the impairment affects and limits each of those criteria. *Id.* In doing so, the examiner considers

> the kind and extent of supports or supervision you receive and the characteristics of any structured setting where you spend your time, which enable you to function. The more extensive the support you need from others or the more structured the setting you need in order to function, the more limited we will find you to be[.]

---

[1] For two of the impairments at issue here—the depressive disorder and the anxiety disorder— there is a third set of criteria, called the Paragraph C criteria, that can also qualify the impairment as a disability. The parties do not focus on the Paragraph C criteria, so the Court will not discuss that issue.

*Id.* § (F)(3)(e). To satisfy the functional criteria test, the impairment "must result in 'extreme' limitation of one, or 'marked' limitation of two, of the four" criteria. *Id.* § (A)(2)(b).

Here, the ALJ concluded that Rushing had "moderate" limitations in each of the four functional criteria, but no "marked" or "extreme" limitations. (Tr. 38–39). The ALJ offered detailed explanations for each of the four functional criteria. (*Id.*). He relied on the medical records, examinations and consultations, and the claimant's testimony during the hearing. (*Id.*).

For the functional criteria of understanding, remembering, and applying information, the ALJ noted that Rushing sometimes forgot to take his medications, sometimes needed help with instructions, and that he experienced some sleep disruption that impacted his cognitive functioning. (Tr. 39). However, the ALJ also noted that a March 2020 consultative examination found that Rushing's cognitive abilities were in the average range, and that, during the hearing, Rushing was able to recall his medications and answer all the questions he was asked. (*Id.*).

For the functional criteria of interacting with others, the ALJ noted that Rushing does not like public places and prefers to go places with his family rather than going alone. (*Id.*). The ALJ also observed that the record shows that Rushing has a history of becoming overwhelmed in crowds and that Rushing's anxiety can be triggered by social situations. (*Id.*). On the other hand, the ALJ noted that, at both consultative examinations and the hearing, Rushing was cooperative, made intermittent eye contact, and could testify "without any emotional outbursts or signs of verbal aggression." (*Id.*).

For the functional criteria of concentrating, persisting, or maintaining pace, the ALJ noted Rushing's difficulties paying attention and finishing things he starts. (*Id.*). The ALJ

6

also pointed out that Rushing has sensory issues that exacerbate his anxiety and make it harder to pay attention in over-stimulating environments. (*Id.*). In contrast, the ALJ observed that, during examinations, Rushing's attention and concentration were normal, and that during the hearing Rushing "testified that he enjoys writing, using his bicycle as transportation and occasionally plays video games." (*Id.*).

Lastly, for the functional criteria of adapting or managing oneself, the ALJ noted that Rushing struggles with stress and changes in his routine, which manifested in his transition to (and eventual withdrawal from) college. (*Id.*). On the other hand, Rushing's insight and judgment were rated as fair to good. (*Id.*). His thought processes were goal directed without being tangential or circumstantial, which could be seen in his self-proclaimed desire to pursue a vocation in writing. (*Id.*).

Rushing argues that the ALJ relied on consultative examinations and Rushing's behavior during the hearing to support his findings of a "moderate" limitation in each of the functional criteria. (Doc. # 10-1 at 10–12). Rushing insists that the examinations and hearing should not form the basis for the ALJ's opinions because they occurred in quiet, familiar, structured settings, and only happened occasionally, so they are not indicative of how Rushing would react in an actual work environment. (*Id.*).

But as described above, the ALJ took all factors into consideration when assessing the functional criteria—the function report, treating physician records, consultative examination reports, the hearing—everything was considered. (Tr. 39). Moreover, the ALJ accommodated Rushing's limitations by crafting a residual functional capacity that took those limitations into account. (Tr. 40). The residual functional capacity limited Rushing to working on tasks in 2-hour increments. (*Id.*). It also limited Rushing to "no

7

more than occasional interaction with supervisor and coworkers[,]" and provided for "limited to occasional contact with the public[.]" (*Id.*).

Accordingly, the Court finds that there is substantial evidence supporting the ALJ's decision. The ALJ's review defeats Rushing's argument because this Court "does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011). Because the ALJ pointed to substantial evidence in the record to support his conclusions as to the functional criteria, this Court declines to re-weigh the ALJ's findings or resolve any perceived conflict of evidence.

### 2. The ALJ crafted an appropriate residual functional capacity.

Rushing's second argument is that the residual functional capacity that the ALJ crafted for Rushing does not adequately address Rushing's limitations. (Doc. # 10-1 at 12–13). Specifically, the ALJ concluded that Rushing could, with limitations, perform a full range of work. (Tr. 40). Rushing maintains that his "failure to sustain work in a full college curriculum" contradicts that conclusion. (Doc. # 10-1 at 12). Rushing also takes issue with the ALJ's observations about Rushing's riding a bicycle, playing video games, and writing. (*Id.*). The Court will not re-examine the same evidence as the ALJ in order to come to a different conclusion. *Reynolds*, 424 F. App'x at 414.

Rushing further contends that "[t]he ALJ rejected the opinions of Drs. Croley, Slade and Bundy because they did not describe what Rushing was capable of doing." (Doc. # 10-1 at 13). He is incorrect. To the contrary, the ALJ found Dr. Crowley's opinion "somewhat persuasive[,]" noting that it was consistent with the evidence of record "insomuch that it does not demonstrate debilitating conditions, particularly in light of the

8

various findings on examination regularly describing the claimant as cooperative, with goal directed, organized, logical and linear thought processes, as well as with a normal attention and concentration and a memory that was grossly intact." (Tr. 43). The ALJ also considered Dr. Bundy and Dr. Slade's opinions, which he noted were also consistent with the evidence of record. (*Id.*).

It is true that the ALJ observed that none of those opinions explained what Rushing was capable of doing despite his impairments. (*Id.*). But the regulations state, in relevant part, that "[a] medical opinion is a statement from a medical source about what you can still do despite your impairment(s)[.]" 20 C.F.R. § 404.1513(a)(2). Thus, the purpose of the ALJ's observation is to note that the opinions from Dr. Crowley, Dr. Bundy, and Dr. Slade do not qualify as "medical opinions" and should be weighed accordingly.

### III. CONCLUSION

Accordingly, **IT IS ORDERED** that:

(1) The Commissioner's decision is supported by substantial evidence and is **AFFIRMED**;

(2) Plaintiff's Motion for Summary Judgment (Doc. # 10) is **DENIED**;

(3) The Commissioner's Motion for Summary Judgment (Doc. # 13) is **GRANTED**;

(4) This matter is **DISMISSED** and **STRICKEN** from the Court's docket; and

(5) An accompanying Judgment shall enter herewith.

This 1st day of June 2023.



L:\DATA\SocialSecurity\Orders\Lexington\22-114 Rushing MSJ Order.docx